IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF GRACE H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF GRACE H., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN W., APPELLANT.

Filed January 7, 2020.    No. A-19-450.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Steffanie J. Garner Kotik, of Kotik & McClure, Attorneys at Law, L.L.C., for appellant.

Maureen Lamski, Deputy Lancaster County Attorney, for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Justin W. appeals from the decision of the separate juvenile court of Lancaster County terminating his parental rights to his daughter, Grace H. We affirm.

## BACKGROUND

### PROCEDURAL BACKGROUND

Justin is the biological father of Grace (born 2018). Rachel H. is the child's biological mother. Rachel's parental rights to Grace were terminated in these same juvenile proceedings

- 1 -

below. However, Rachel is not part of this appeal and therefore she will only be discussed as necessary.

Grace's meconium tested positive for methamphetamines and amphetamines after her birth. Subsequently, on September 6, 2018, the State filed a petition alleging that Grace was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), due to the faults or habits of Rachel. Justin was named as the alleged father in the petition (his paternity was later established via genetic testing). Also on September 6, 2018, the State filed a motion for ex parte temporary custody of Grace. After a hearing on September 12, the juvenile court placed Grace in the custody of the Nebraska Department of Health and Human Services (DHHS); Grace has remained in a foster home ever since.

After a hearing on October 25, 2018, Grace was adjudicated to be a child within the meaning of § 43-247(3)(a) due to the faults or habits of Rachel, based on Rachel's no contest plea to the allegations in the petition. Justin was not present at the October 25 hearing, but counsel did appear on his behalf. The October 25 order allowed for supervised visitation with Grace.

A disposition hearing was held on December 3, 2018, and the juvenile court's order was filed the next day. The order notes that Justin appeared at the hearing with his counsel. The court found that Grace should continue in an out-of-home placement due to her parents' need to engage in court-ordered services designed to ensure her safety. The court ordered Justin to participate in supervised parenting time with Grace as arranged and approved by DHHS. The order also stated that if Justin wished to be considered for placement of Grace, he was to participate in random drug and alcohol testing (conducted through a provider utilizing a call-in line), participate in an evidence-based parenting class, participate in a substance use evaluation and initial diagnostic interview, and attend all medical appointments for Grace. All parties and counsel were ordered to appear at team meetings to be held on January 4 and February 7, 2019.

A review hearing was held on March 4, 2019. The juvenile court's order reflects that Justin did not appear at the hearing, but counsel appeared on his behalf. The court orders for Justin remained the same as they did in the disposition order of December 3, 2018, except that the court now ordered that monthly team meetings would be held, at which time all parties and counsel were to appear, and the court also ordered Justin to participate in a "child parent dyadic assessment" with Grace.

Also on March 4, 2019, the State filed a "Supplemental Petition and Motion for Termination of Parental Rights." The State alleged that Grace was a child within the meaning of § 43-247(3)(a) due to the faults or habits of Justin in that (1) Grace had been in the legal and physical custody of DHHS since September 12, 2018, and Justin had failed to place himself in a position to care for her; (2) Justin had not maintained contact with Grace and had not visited her since December 15, 2018; and (3) Justin's actions and/or the situation placed Grace at risk of harm. Additionally, the State sought to terminate Justin's parental rights to Grace pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016) (substantially and continuously or repeatedly neglected and refused to give child necessary care and protection).

After a hearing on April 23, 2019, Grace was adjudicated to be a child within the meaning of § 43-247(3)(a) due to the faults or habits of Justin.

Also on April 23, 2019, the hearing on the motion to terminate Justin's parental rights was held. The State called one witness, the DHHS caseworker, and Justin testified in his own behalf. Several exhibits were also received into evidence. A summary of the relevant evidence follows.

Mary Kate Martin was employed by DHHS child and family services, specifically with the drug court team. She was assigned to Grace's case on November 15, 2018, taking over for another caseworker. When Martin was assigned to the case, she had a case transfer meeting wherein she was given updates on visits and what had occurred in the case so far. Martin met Justin for the first time at a visitation in November, and she gave him her card with her contact information; Martin's contact information has not changed.

Martin testified that Justin had supervised visitation with Grace from the end of October until December 10, 2018 (December 14 according to the court report received into evidence). According to the visitation notes received into evidence, there were no safety concerns. And although Justin was initially unfamiliar with basic parenting skills (e.g., changing a diaper), he was learning. According to Martin, visits were placed on hold in January 2019 due to Justin's lack of communication or involvement.

After the disposition hearing on December 3, 2018, Martin's attempts to contact Justin were unsuccessful. After the disposition hearing, Martin attempted to contact Justin a "[m]inimum" of "four to five times a month." She called (and left voicemails) and texted the number that he had provided. And on February 28, 2019, Martin "sent a letter to the address that he provided" (the same address Justin confirmed at the termination hearing); the letter was not returned to Martin, but she received no response. Additionally, in April, Martin contacted Justin's attorney who provided her with an updated phone number for Justin; Martin called and texted that number, but received no response.

Martin testified that to her knowledge, Justin had not completed the court ordered services that were required if he wanted to be considered for placement (i.e., random drug and alcohol testing, evidence based parenting class, substance use evaluation and initial diagnostic interview, attend Grace's medical appointments). Although Justin did report doing a parenting class "online," Martin never received any documentation of his participation. Martin acknowledged that she was not able to get ahold of Justin after the disposition hearing on December 3, 2018, to provide him information for the call-in line for the drug and alcohol testing, but stated he was told at the disposition hearing that it would be at "Jenda."

Martin testified that she last had contact with Justin at the disposition hearing on December 3, 2019. Justin had not seen Grace since December 10 (December 14 according to the court report). Furthermore, Justin did not attend the team meetings on January 4 and February 7, 2019, as ordered by the court. Martin stated that Justin had not been involved in this case, and Grace "doesn't know" him. Martin opined that it was in Grace's best interests to have Justin's parental rights terminated because Grace deserves permanency and safety.

Justin testified that he was having consistent visits with Grace, but "[all] of a sudden I was told I had to start calling in before my visits." He said that at his work, "it was hard to keep track of time" and if he called in late he was not able to have a visit. Eventually he learned from the visitation center that the visitation provider had changed. When asked if he had any communication

with anyone as to who he needed to contact in order to set up visits again, Justin responded, "No." (Martin testified that he could have contacted her.)

Justin stated that in December 2018, he was having issues with his phone, and "probably in March" 2019, he got a new phone and had to change phone numbers. So, between December 2018 and March 2019 he did not have his own phone. When asked if during that time he had access to a phone, Justin responded, "[I]f I were to use somebody's phone or something." Because his phone was broken, from December 2018 to March 2019, he did not receive any calls or text messages that came in on that phone. Justin stated he never received Martin's letter dated February 28, 2019. He said he attempted to contact his caseworker "yesterday" (the day before the termination hearing); he went to the court and was directed to "the Golds Building" where he was told someone named "Tonya" was his caseworker. (Martin testified that neither she nor the DHHS child and family services office is located in the Gold's Building).

On cross-examination, Justin was asked if he attempted to speak with anyone at DHHS prior to "yesterday," and he responded, "No." When asked why he waited until "yesterday" to contact DHHS, Justin responded, "Well it just seems like it's gone on so long without hearing anything or without getting anywhere -- I don't know. I just wanted to try to talk to somebody face to face." When asked again why he did not make an attempt sooner than the day before the termination hearing, Justin said, "Well I was kinda still waiting on I guess a response from the lawyers something [sic] since the last court date for having visitation and stuff." Justin acknowledged that he had maintained contact with his attorney. Justin was asked if he knew who Martin was, and he responded, "[t]he caseworker." He also stated he had Martin's phone number "'til my phone broke, and then I lost my contacts."

Justin agreed that he is willing to do whatever is necessary to be able to parent Grace. He is willing to participate in the services ordered by the juvenile court (i.e., random drug and alcohol testing, evidence based parenting class, substance use evaluation and initial diagnostic interview). He stated he was not given the information to begin drug testing and he did not know where to go or who to contact. He was also not given contact information for a substance use evaluation and initial diagnostic interview. He believes that a family support worker would be beneficial to him, and stated he "actually need[s] one." (Martin testified that Justin did not want family support when it was offered to him).

JUVENILE COURT'S DECISION

In an order filed on April 25, 2019, the juvenile court terminated Justin's parental rights to Grace after finding by clear and convincing evidence that statutory grounds for termination existed pursuant to § 43-292(2) and that termination of his parental rights was in the child's best interests.

Justin appeals the juvenile court's order.

ASSIGNMENTS OF ERROR

Justin assigns that the juvenile court erred in determining (1) the State proved by clear and convincing evidence that termination was in the child's best interests and (2) the State provided a reasonable time for him to rehabilitate himself after adjudication.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

## ANALYSIS

### STATUTORY GROUNDS FOR TERMINATION

In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

Although Justin does not specifically assign error to the grounds for terminating his parental rights, we briefly address such for the sake of completeness. In its order terminating Justin's parental rights to Grace, the juvenile court found that statutory grounds existed pursuant to § 43-292(2). Section 43-292(2) generally provides for termination of parental rights when the parent has neglected and refused to give the necessary care to the juvenile or a sibling of the juvenile. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). One need not have physical possession of a child to demonstrate the existence of neglect contemplated by § 43-292(2). *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). "A parent may as surely neglect a child of whom she [or he] does not have possession by failing to put herself [or himself] in a position to acquire possession as by not properly caring for a child of whom she [or he] does have possession." *In re Interest of J.N.V.*, 224 Neb. 108, 112, 395 N.W.2d 758, 761 (1986).

Justin last saw Grace in December 2018. His visits were subsequently placed on hold due to his lack of communication or involvement. Martin's repeated attempts to contact Justin after the disposition hearing on December 3 were unsuccessful. Because Martin was not able to get in contact with Justin, she was not able to provide him with contact information for court-ordered services. By Justin's own testimony, he did not attempt to contact DHHS prior to the day before the termination hearing. By his own actions and choices, Justin failed to put himself in a position to acquire possession of Grace. See *In re Interest of J.N.V., supra*. Our de novo review of the record clearly and convincingly shows that grounds for termination of Justin's parental rights under § 43-292(2) were proven by sufficient evidence. Thus, the next inquiry is whether termination is in Grace's best interests.

### BEST INTERESTS AND UNFITNESS

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). But that is not all. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id*. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id*. The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the children's best interests. *In re Interest of Nicole M., supra*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id*. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id*.

As stated previously, Justin's last contact with Grace was in December 2018. Since December 3, Justin has failed to maintain contact with DHHS. Although he claims he lost Martin's contact information when his phone broke in December, that is no excuse for failing to maintain contact with Martin and DHHS. Justin testified that he did maintain contact with his attorney. His attorney could have provided Martin's contact information. Justin's alleged attempt to make contact with DHHS the day before the termination hearing, even if true, came too late. Justin's failure to maintain contact prevented him from being provided the services required to gain placement of Grace. And his failure to maintain contact also prevented him from resuming visitation, if that was something he was interested in doing.

At the time of the hearing, Grace had been in an out-of-home placement for 7 months, and Justin had not seen her in 4 months. Martin opined that it was in Grace's best interests to terminate Justin's parental rights because Grace deserves permanency and safety. We agree. After December 2018, Justin showed no interest in parenting Grace. "Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity." *In re Interest of Walter W.*, 274 Neb. 859, 872, 744 N.W.2d 55, 65 (2008). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Ryder J., supra*. Justin argues he was not given a "reasonable time after the adjudication hearing . . . to rehabilitate himself." Brief for appellant at 15. However, termination of parental rights cases based on parental neglect do not require a prior adjudication. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 610, 591 N.W.2d 557, 566 (1999) ("[t]here is no requirement of longitudinal involvement of the juvenile court under § 43-292(1) through (5), much less a prior adjudication"). Though the timeframe involved in this case was not as long as in some cases, the record clearly shows that Justin has failed to make Grace a priority. We find that the State has rebutted the presumption of parental fitness as to Justin. We further find that there is clear and convincing evidence that it is in Grace's best interests to terminate Justin's parental rights.

CONCLUSION

For the reasons stated above, we affirm the order of the juvenile court terminating Justin's parental rights to Grace.

AFFIRMED.